## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MARVIN H. MAURRAS REVOCABLE TRUST, DERIVATIVELY AND ON BEHALF OF ACCRETIVE HEALTH, INC., )<br>PLAINTIFF, )<br>VS. )<br>EDGAR M. BRONFMAN, JR., J. MICHAEL CLINE, STEVEN N. KAPLAN, STANLEY N. LOGAN, DENIS J. NAYDEN, GEORGE P. SHULTZ, ARTHUR H. SPIEGEL, III, MARY A. TOLAN, MARK A. WOLFSON )<br>DEFENDANTS, )<br>AND )<br>ACCRETIVE HEALTH, INC. )<br>NOMINAL DEFENDANT. ) | Case No. _____<br><br><br><br>JURY TRIAL DEMANDED |

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Marvin H. Maurras Revocable Trust ("Plaintiff"), by and through its attorneys, derivatively on behalf of nominal defendant Accretive Health, Inc. ("Accretive Health" or the "Company"), submits this Verified Shareholder Derivative Complaint against the Defendants named herein. Plaintiff's allegations are based upon personal knowledge as to itself and its own acts, and upon information and belief developed from the investigation and analysis of its counsel, which includes, among other things, public filings by Accretive Health with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, matters of public record available from various state and federal government websites,

complaints pending against the Company in state and federal courts, and other information available in the public domain. To the best of Plaintiff's knowledge, information, and belief, the allegations herein not based on personal knowledge are likely to have evidentiary support after a reasonable opportunity for further investigation, discovery, and analysis.

The crux of Plaintiff's complaint against the officers and directors of Accretive Health is that they were intentionally derelict and/or consciously disregarded their fiduciary duty of loyalty to the company by making several decisions for which there was no valid business justification, including, but not limited to systematically and pervasively violating health privacy laws, state debt collection laws and state consumer protection laws. As a result of Defendants' breaches of loyalty owed to Accretive Health, the company is now the subject of numerous investigations and potential lawsuits by the Department of Justice and shareholders, all of which has caused and will continue to cause, significant financial damage to the Company, and perhaps most importantly, irrevocable injury to Accretive Health's reputation.

## I.  <u>NATURE OF THE ACTION</u>

1.     This is a shareholders' derivative action brought by Plaintiff for the benefit of Accretive Health against Defendants, who are current members of the Company's Board of Directors (the "Board"). This action seeks to recover for Accretive Health and its shareholders the hundreds of millions of dollars of financial and reputational damages caused by the Defendants' breach of duties. As a result the Company is now subject to serious legal liability.

2.     This legal liability, which includes Accretive Health being the subject of federal and private investigations, lawsuits, settlements and consent orders, with additional actions against the Company and certain key officers likely to come, is the direct and proximate cause of the Board members' breaches of their fiduciary duty of loyalty owed to Accretive Health.

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.    This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).    This action is not a collusive one intended to confer jurisdiction on a court of the United States that the Court would otherwise lack.

4.    Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein, including all or primarily all of Defendants' participation in the wrongful acts detailed herein, occurred in this District.    One or more of the Defendants either resides in or maintains executive offices in this District, and Defendants have received substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## III.    PARTIES

**Plaintiff**

5.    Plaintiff, Marvin H. Maurras Revocable Trust, as set forth in the accompanying verification, is, and was at all relevant times, a shareholder of nominal defendant Accretive Health.    The Trustee for the Marvin H. Maurras Revocable Trust is Marvin H. Maurras, who is a citizen of the State of Arkansas.

**Nominal Defendant**

6.    Nominal Defendant Accretive Health is a Delaware corporation located in this District with its principal executive offices located at 401 North Michigan Avenue, Suite 2700, Chicago, IL 60611.

7.     As described in the Company's Proxy Statement issued March 30, 2012, "Accretive Health is a leading provider of services that help healthcare providers generate sustainable improvements in their operating margins and healthcare quality while also improving patient, physician and staff satisfaction. Our core service offering in revenue cycle management services helps U.S. healthcare providers to more efficiently manage their revenue cycles, which encompass patient registration, insurance and benefit verification, medical treatment documentation and coding, bill preparation and collections. Through the implementation of our distinctive operating model, our customers realize sustainable improvements in the capture of fund contractually owed to them which translates to improved operating margins, and improve the satisfaction of their patients, physicians and staff. Our quality and total cost of care service offering, introduced in 2010, can enable healthcare providers to effectively manage the health of a defined patient population, which we believe is a future direction of the manner in which healthcare services will be delivered in the United States. Our physician advisory services, or Accretive PAS, offering is focused on assisting hospitals maximize their compliant revenue associated with emergency room visits and similar patient classification issues. Our customers typically are multi-hospital systems, including faith-based or community healthcare systems, academic medical centers and independent ambulatory clinics, and their affiliated physician practice groups."

**Defendants**

8.     The biographical information for each of the Defendants below has been taken from the Company's Form 14-A Definitive Proxy Statement and Corporate website:

9.     Defendant Edgar M. Bronfman, Jr. ("Bronfman") has been a member of Accretive Health's board of directors since October 2006. Bronfman "is General Partner of Accretive LLC,

which he joined in 2002. Previously, he served as chairman and chief executive officer of Warner Music Group. Before joining Warner Music Group in March 2004, Mr. Bronfman served as chairman and chief executive officer of Lexa Partners LLC, a management venture capital group which he founded in April 2002. Mr. Bronfman was vice chairman of the board of directors of Vivendi Universal, S.A. from December 2000 until December 2003 and also served as an executive officer of Vivendi Universal from December 2000 until December 2001. Prior to the formation of Vivendi, Mr. Bronfman served as president and chief executive officer of The Seagram Company Ltd. from June 1994 until December 2000 and as president and chief operating officer of Seagram from 1989 until June 1994. Mr. Bronfman is a director of Warner Music Group, and IAC/InterActiveCorp, a publicly-held operator of Internet businesses. Mr. Bronfman is also a member of the board of trustees of the New York University Medical Center, and a member of the Council on Foreign Relations."

10. Defendant J. Michael Cline ("Cline") is a founder of Accretive Health. As described in the Company's Proxy Statement issued March 30, 2012, Mr. Cline "has been a member of our board of directors since August 2003 and has served as chairman of the board since July 2009. Mr. Cline has served as the founding managing partner of Accretive, LLC, a private equity firm, since founding that firm in December 1999. From 1989 to 1999, Mr. Cline served as a general partner of General Atlantic Partners, LLC, a private equity firm. Mr. Cline serves on the boards of several privately-held companies. He also serves on the advisory board of the Harvard Business School Rock Center for Entrepreneurship, on the board of the National Fish and Wildlife Foundation and as a trustee of Panthera, an organization devoted to the preservation of the world's wild cat species where he also chairs Panthera's Tigers Forever initiative."

5

11.     Defendant Steven N. Kaplan ("Kaplan") has been a director of Accretive Health since July 2004. As described in the Company's Proxy Statement issued March 30, 2012, "[s]ince 1988, Mr. Kaplan has served as a professor at the University of Chicago Booth School of Business, where he currently is the Neubauer Family Professor of Entrepreneurship and Finance and serves as the faculty director of the Polsky Center for Entrepreneurship. Mr. Kaplan also serves as a director of Morningstar, Inc., a publicly-held provider of independent investment research, and on the boards of trustees of the Columbia Acorn Trust and Wanger Asset Trust."

12.     Defendant Stanley N. Logan ("Logan") has been a director of Accretive Health since April 2011.  As described in the Company's Proxy Statement issued March 30, 2012, M. Logan "is partner and chief operating officer of Sikich LLP, a management consulting firm. Previously, Mr. Logan served as a managing director in the forensic accounting practice of LECG Corporation, a global business advisory services consulting firm, from February 2010 until March 2011. From 2006 until 2009, Mr. Logan served as a vice president of Huron Consulting Group, a consulting firm. From 2003 to 2006, Mr. Logan was managing partner of KPMG LLP's Chicago office and he was national sector leader for consumer products at KPMG in 2002. From 1980 to 2002, Mr. Logan held various positions at Arthur Andersen LLP, including audit partner, manager and senior accountant. Mr. Logan is a certified public accountant. Since 2007, he has served on the board of directors of Schawk, Inc. and is also a member of Schawk's audit committee. From 2003 until 2007, Mr. Logan served on the boards of directors of The Field Museum, where he served as a member of its finance committee, and Ravinia Festival Association, where he served as a member of its audit committee."

13.     Defendant Denis J. Nayden ("Nayden") has been a director of Accretive Health since October 2003 and served as co-chairman of the board until July 2009. As described in the

Company's Proxy Statement issued March 30, 2012, Mr. Nayden "has served as a managing partner of Oak Hill Capital Management, LLC, a private equity firm, since 2003. From 2000 to 2002, he was chairman and chief executive officer of GE Capital Corporation, the financing unit of General Electric Company, and prior to that had a 25-year tenure at General Electric. Mr. Nayden is a director of Genpact Limited, a publicly-held global provider of business process services; RSC Holdings, Inc., a publicly-held equipment rental provider and several privately-held companies. He also serves on the board of trustees of the University of Connecticut."

14. Defendant George P. Shultz ("Shultz") is Director Emeritus of Accretive Health. As described in the Company's Proxy Statement issued March 30, 2012, Mr. Shultz "has had a distinguished career in government, academia and business. He has served as the Thomas W. and Susan B. Ford Distinguished Fellow at the Hoover Institution of Stanford University since 1991. Mr. Shultz served as United States Secretary of State from 1982 until 1989, chairman of the President's Economic Policy Advisory Board from 1981 until 1982, United States Secretary of the Treasury and Chairman of the Council on Economic Policy from 1972 until 1974, Director of the Office of Management and Budget from 1970 to 1972, and United States Secretary of Labor from 1969 until 1970. From 1948 to 1957, Mr. Shultz taught at MIT, taking a year's leave of absence in 1955 to serve as a senior staff economist on the President's Council of Economic Advisors during the Eisenhower administration. He then taught from 1957 to 1969 at Stanford University and the University of Chicago Graduate School of Business, where he also served as Dean for six years. From 1974 to 1982, Mr. Shultz was president and a director of Bechtel Group, Inc., a privately-held global leader in engineering, construction and project management. Among numerous honors, Mr. Shultz was awarded the Medal of Freedom, the nation's highest civilian honor, in 1989, and holds honorary degrees from more than a dozen universities. He also

chairs the Governor of California's Economic Advisory Board and the J.P. Morgan Chase International Council; serves as Advisory Council Chair of the Precourt Energy Efficiency Center at Stanford University; chairs the MIT Energy Initiative External Advisory Board; and serves on the board of directors of Fremont Group, L.L.C., a private investment firm."

15.     Defendant Arthur H. Spiegel, III ("Spiegel") has been a director of Accretive Health since October 2003 and served as co-chairman of the board until July 2009.  As described in the Company's Proxy Statement issued March 30, 2012, "[s]ince 2002, Mr. Spiegel has been a private investor. From 1996 until 2002, Mr. Spiegel was President of CSC Healthcare Group, which offered consulting, system integration, claims processing software and business process and IT outsourcing services to the healthcare industry. Mr. Spiegel founded APM Management Consultants, a healthcare consulting firm, in 1974 and served as its CEO until it was acquired by Computer Science Corporation in 1996. He serves on the boards of several privately-held companies."

16.     Defendant Mary A. Tolan ("Tolan") is a founder of Accretive Health, has served as president and chief executive officer ("CEO"), and has been a director since November 2003. As described in the Company's Proxy Statement issued March 30, 2012, "[p]rior to joining our company, Ms. Tolan spent 21 years at Accenture Ltd, a leading global management consulting, technology services and outsourcing company. At Accenture, Ms. Tolan served in several leadership roles, including group chief executive for the resources operating group that had approximately $2 billion in annual revenue, and as a member of Accenture's executive committee and management committee. She serves on the board of trustees of the University of Chicago, Loyola University and the Lyric Opera of Chicago."

17.    Defendant Mark A. Wolfson ("Wolfson") has been a director of Accretive Health since October 2003.  As described in the Company's Proxy Statement issued March 30, 2012, "Mr. Wolfson "has served as a managing partner of Oak Hill Capital Management, LLC, a private equity firm, since 1998, and is a founding managing partner of Oak Hill Investment Management, L.P. Mr. Wolfson has been on the faculty of the Stanford University Graduate School of Business since 1977, has served as its associate dean, and has held the title of consulting professor since 2001. He has been a research associate of the National Bureau of Economic Research since 1988 and serves on the executive committee of the Stanford Institute for Economic Policy Research. Mr. Wolfson is a director of eGain Communications Corporation, a publicly-held provider of multi-channel customer service and knowledge management software; Financial Engines, Inc., a publicly-held provider of portfolio management and retirement services and investment advice; and several privately-held companies. He is also an advisor to the investment committee of the William and Flora Hewlett Foundation."

18.    The Defendants named above in paragraphs 9 through 17 may collectively be referred to as "Individual Defendants," and the Defendants named above in paragraphs 9 through 17 may be referred to as "Director Defendants."

## IV.    DUTIES OF INDIVIDUAL DEFENDANTS

19.    By reason of their positions as officers, directors and/or fiduciaries of Accretive Health and because of their ability to control the business and corporate affairs of Accretive Health, the Defendants owe and owed Accretive Health and its shareholders a fiduciary duty of loyalty and were and are required to use their utmost ability to control and manage Accretive Health in a fair, just, honest and equitable manner, and were and are required to act in

furtherance of the best interests of Accretive Health and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

20.    To discharge their duties, the officers and directors of Accretive Health were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial and business affairs of Accretive Health.

## V.    SUBSTANTIVE ALLEGATIONS

21.    Accretive Health maintains a "Code of Business Conduct and Ethics" which "sets forth legal and ethical standards of conduct for directors, officers and employees of Accretive Health." This Code states "the Company requires that all employees, officers and directors comply with all laws, rules and regulations applicable to the Company wherever it does business. You are expected to use good judgment and common sense in seeking to comply with all applicable laws, rules and regulations and to ask for advice when you are uncertain about them."

22.    The Company, and the Board of Directors, failed to comply with this internal Code by virtue of violating numerous laws that impact the very core of the Company's business practices.

23.    Accretive Health holds itself out as having "a great track record of helping hospitals enhance their quality of care."

24.    However, the Minnesota Attorney General cites violations of the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936, as well as the Health Information Technology for Economic and Clinical Health Act ("HITECH"), amending HIPAA, Pub. L. No. 111-5, 123 Stat. 226, on Accretive's part in a Complaint filed in January 2012.

25. Additionally, the Minnesota Attorney General alleges violations of the Department of Health and Human Services Regulations at 45 C.F.R. §160 *et seq.* as well as violations of state law including the Minnesota Health Records Act, Minn. Stat. §144.291 *et seq.*, Minnesota's debt collection statutes, Minn. Stat. Ch. 332, and Minnesota's consumer protection laws, Minn. Stat. §§325D.43 *et seq.* & 325F.68 *et seq.*

26. As a licensed debt collection agency in Minnesota, Accretive managed and operated the "revenue cycles" of Fairview Health Services ("Fairview") and North Memorial Health Care ("North Memorial").

27. Fairview entered into an agreement with Accretive for a five-year implementation of Accretive's "Quality and Total Cost of Care" program allowing Accretive to aid Fairview in negotiations with insurance companies and HMOs. Accretive then received a portion of the hospital's incentive pay- an amount paid to hospitals from insurance companies and HMOs as an incentive to minimize patient costs.

28. Because of these contracts, Accretive has amassed sensitive and personal information of patients that would fall under the scope of HIPAA. However, according to the Minnesota Attorney General, Accretive has failed to keep such data secured and private as is required under HIPAA and HITECH.

29. Furthermore, Accretive failed to comply with the Minnesota Health Records Act, Minnesota Debt Collection laws, and the Minnesota Prevention of Consumer Fraud Act and Uniform Deceptive Trade Practices Act.

30. As a result of the Individual Defendants breaches of loyalty and misconduct, Accretive Health has been and continues to be subject to civil liability, regulatory fines and penalties, investigation costs, legal fees, and possibly criminal liability.

31.    On March 29, 2012, Accenture filed a SEC Form 8-K where it acknowledged these violations. The statement stated, in relevant part:

> Accretive Health (NYSE: AH) announced today that in an ongoing effort to resolve its outstanding issues with the Minnesota Attorney General, Accretive Health and Fairview Health Services have decided to amend their revenue cycle operations agreement to transition the management of those operations to Fairview leadership. The company is currently working with Fairview on transition plans. Accretive Health and Fairview will continue their work together on their Quality and Total Cost of Care initiative for population health management.
>
> Accretive Health expects the revenue impact of the new revenue cycle operations arrangement with Fairview to be in the range of $62 million to $68 million, or approximately 6% of the company's expected 2012 revenue. Accretive Health is working to offset the majority of this revenue shortfall with work from new and existing customers. If the company is unable to do so, the new Fairview arrangement will adversely affect Accretive Health's fiscal year 2012 guidance. The company will provide an update on its financial metrics and 2012 guidance on its quarterly earnings call on May 9th.

32.    After this disclosure, Accenture's stock prices fell, causing financial damage to the Company.

33.    Shortly after, on April 24, 2012, the Minnesota Attorney General released a report focused on the business practices and methods used by Accretive Health when collecting debts.

34.    Additionally, these practices were further exposed and detailed in a New York Times article from April 24, 2012 entitled "Debt Collector Is Faulted for Tough Tactics in Hospitals." It states, in relevant part:

> Hospital patients waiting in an emergency room or convalescing after surgery are being confronted by an unexpected visitor: a debt collector at bedside.
>
> This and other aggressive tactics by one of the nation's largest collectors of medical debts, Accretive Health, were revealed on Tuesday by the Minnesota attorney general, raising concerns that such practices have become common at hospitals across the country.
>
> The tactics, like embedding debt collectors as employees in emergency rooms and demanding that patients pay before receiving treatment, were outlined in hundreds

of company documents released by the attorney general. And they cast a spotlight on the increasingly desperate strategies among hospitals to recoup payments as their unpaid debts mount.

To patients, the debt collectors may look indistinguishable from hospital employees, may demand they pay outstanding bills and may discourage them from seeking emergency care at all, even using scripts like those in collection boiler rooms, according to the documents and employees interviewed by The New York Times.

In some cases, the company's workers had access to health information while persuading patients to pay overdue bills, possibly in violation of federal privacy laws, the documents indicate.

The attorney general, Lori Swanson, also said that Accretive employees may have broken the law by not clearly identifying themselves as debt collectors.

Accretive Health has contracts not only with two hospitals cited in Minnesota but also with some of the largest hospital systems in the country, including Henry Ford Health System in Michigan and Intermountain Healthcare in Utah. Company executives declined to comment on Tuesday.

Although Ms. Swanson did not bring action against the company on Tuesday, she said she was in discussions with state and federal regulators about a coordinated response to Accretive Health's practices across the country. Regulators in Illinois, where Accretive is based, are watching the developments closely, according to Sue Hofer, a spokeswoman with the State Department of Financial and Professional Regulation.

"I have every reason to believe that what they are doing in Minnesota is simply company practice," Ms. Swanson said in an interview, but declined to provide details.

\* \* \*

An Accretive spokeswoman declined to comment on whether other states were looking into its practices and issued a brief statement, "We have a great track record of helping hospitals enhance their quality of care." In its annual report, the company said it was cooperating with the attorney general to resolve the issues in Minnesota.

\* \* \*

Accretive is one of the few companies specializing in hospital debt collection that is publicly traded. Last year, it reported $29.2 million in profit, up 130 percent from a year earlier.

Late last month, Fairview Health Services, a Minnesota hospital group that Accretive provided services to, announced it was canceling its contract with Accretive for back-office debt collection. After Accretive informed investors, its stock plunged 19 percent in a day. On Tuesday, the company's shares closed at $18.49, down 2.7 percent.

Accretive says that it trains its staff to focus on getting payment through "revenue cycle operations." Accretive fostered a pressurized collection environment that included mandatory daily meetings at the hospitals in Minnesota, according to employees and the newly released documents. Employees with high collection tallies were rewarded with gift cards. Those who fell behind were threatened with termination.

"We've started firing people that aren't getting with the program," a member of Accretive's staff wrote in an e-mail to his bosses in September 2010.

Collection activities extended from obstetrics to the emergency room. In July 2010, an Accretive manager told staff members at Fairview that they should "get cracking on labor and delivery," since there is a "good chunk to be collected there," according to company e-mails.

Employees were told to stall patients entering the emergency room until they had agreed to pay a previous balance, according to the documents. Employees in the emergency room, for example, were told to ask incoming patients first for a credit card payment. If that failed, employees were told to say, "If you have your checkbook in your car I will be happy to wait for you," internal documents show.

Employees at Accretive's client hospitals ask patients to make "point of service" payments before they receive treatment. Until she went to Fairview for her son Maxx's ear tube surgery in November, Marcia Newton, a stay-at-home mother in Corcoran, Minn., said she had never been asked to pay for care before receiving it. "They were really aggressive about getting that money upfront," she said in an interview.

Ms. Newton was shocked to learn that the employees were debt collectors. "You really feel hoodwinked," she said.

While hospital collections at Fairview increased, patient care suffered, the employees said. "Patients are harassed mercilessly," a hospital employee told Ms. Swanson.

Patients with outstanding balances were closely tracked by Accretive staff members, who listed them on "stop lists," internal documents show. In March 2011, doctors at Fairview complained that such strong-arm tactics were discouraging patients from seeking lifesaving treatments, but Accretive officials dismissed the complaints as "country club talk," the documents show.

Ms. Swanson said that the hounding of patients violated the Emergency Medical Treatment and Active Labor Act, a federal law requiring hospitals to provide emergency health care regardless of citizenship, legal status or ability to pay.

In the January lawsuit, Ms. Swanson said that by giving its collectors access to health records, Accretive violated the Health Insurance Portability and Accountability Act, known as Hipaa (pronounced HIP-ah). For example, an Accretive collection employee had access to records that showed a patient had bipolar disorder, Parkinson's disease and a host of other conditions.

In addition, she said, the company broke state collections laws by failing to identify themselves as debt collectors when dealing with patients.

35.     The publication of this article caused Accretive Health's stock to drop even more.

36.     Because of the violations of Minnesota and other state laws, as well as the lack of adherence to Accretive Health's own internal "Code of Business Conduct and Ethics," the Company now faces liability for federal and state statute violations in addition to losing current and future lucrative business contracts.

37.     However, the biggest threat to Accretive Health may not be the large sums of money it will have to pay in penalties and legal settlements. The biggest threat may be the potential impact of the whole affair on its reputation, client relationships and employee morale. The actions of the Individual Defendants have caused, and will continue to cause, significant harm to Accretive Health's reputation. Therefore, the true damage to Accretive Health resulting from the Individual Defendant's breaches of fiduciary duties and misconduct will easily measure in the billions of dollars and have long-term, negative effects on the Company.

## VI.     DERIVATIVE ACTION ALLEGATIONS

38.     Plaintiff brings this action derivatively on behalf of and for the benefit of Accretive Health to redress injuries suffered, and yet to be suffered, by it as a direct and proximate result of the breaches of fiduciary duty alleged herein. The Company is named as a nominal defendant solely in a derivative capacity.

39.     Plaintiff purchased shares of Accretive Health common stock during the relevant period and they have held such shares continuously since they purchased them. Thus, Plaintiff was an Accretive Health shareholder at the time of the wrongdoing complained of herein. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in this litigation, and intends to retain their shares of Accretive Health throughout the duration of this litigation.

40.     The wrongful acts complained of herein subject, and will persist in subjecting Accretive Health to continuing harm because the adverse consequences of the injurious actions are still in effect and ongoing.

41.     The wrongful actions complained of herein were unlawfully concealed from the Company's shareholders.

## VII.     DEMAND EXCUSED ALLEGATIONS

42.     Further, Plaintiff did not make a demand on the shareholders of Accretive Health to institute this action because such a demand would have been a futile and useless act for at least the following reasons:

a.     Accretive Health is a publicly-held company with millions of shares that are issued and outstanding;

b.     making a demand on such a number of shareholders would be impracticable and impossible for Plaintiff, who has no way of determining the names, addresses or phone numbers of such shareholders; and

c.     making a demand on all shareholders would force Plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

43.     A majority of the Board is interested and lacks independence and all current Board members have demonstrated their unwillingness and inability to address the claims alleged herein seeking pecuniary and other relief to compensate the Company for the wrongdoing alleged herein.  Thus, Plaintiff did not make a demand on the current Board before instituting this action because the factual allegations herein create a reasonable doubt that a majority of the Director Defendants could have properly exercised independent and disinterested business judgment in responding to such a demand.

**COUNT I**
**DERATIVELY ON BEHALF OF ACCRETIVE HEALTH**
**(Against the Individual Defendants for Breach of Fiduciary Duty of Loyalty)**

44.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

45.     At all relevant times the Individual Defendants owed the utmost fiduciary duty of loyalty to the Company and its shareholders.

46.     The Individual Defendants' duty of loyalty required that they act in good faith to protect the best interests of the Company and its shareholders.

47.     Accordingly, the Individual Defendants breached their duties of loyalty by acting unfaithfully to the Company and its shareholders in numerous ways as described above.

48.     The Individual Defendants are not entitled to any protections that may otherwise have been afforded by the business judgment rule.

**COUNT II**
**CONTRIBUTION AND INDEMINFICATION**
**(Against the Individual Defendants)**

49.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.     Accretive Health is alleged to be liable to various persons, entities and/or classes by virtue of the same facts and circumstances as are alleged herein which gives rise to the individual Defendants' liability to Accretive Health.

51.     Accretive Health's alleged liability on account of the wrongful acts and practices related to the misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants in connection with all such claims that have been, are, or may be in the future asserted against Accretive Health by virtue of the Individual Defendants' misconduct and breaches of fiduciary duty.  Plaintiff, on behalf of Accretive Health, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of Accretive Health, Plaintiff prays for judgment as follows:

A.      A judgment finding that a shareholder demand on the Accretive Health Board would have been a futile and useless act;

B.      A judgment finding that the Individual Defendants have breached their fiduciary duties to the Company;

C.      A judgment against all of the Individual Defendants in favor of Accretive Health for the amount of damages sustained by Accretive Health as a result of the breaches of fiduciary duties by each Individual Defendant as alleged herein, jointly and severally, in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum legal rate allowable by law;

D.      A judgment requiring the Individual Defendants to return to Accretive Health all compensation and remuneration of whatever kind paid to them by Accretive Health during the time that they were in breach of the fiduciary duties they owed to Accretive Health;

E.    Directing the Individual Defendants to establish, maintain, and fully fund effective compliance programs to ensure that Accretive Health's directors, officers and employees do not engage in wrongful and illegal practices;

F.    Granting appropriate equitable and/or injunctive relief to remedy the Individual Defendant's misconduct, as permitted by law;

G.    Awarding to Plaintiff the costs and disbursements of this consolidated action, including reasonable attorneys' and experts' fees and expenses;

H.    Granting any such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all applicable issues.


Dated:  May 3, 2012                          Respectfully submitted,

                                             /s/ Edward A. Wallace
                                             Edward A. Wallace
                                             Amy E. Keller
                                             WEXLER WALLACE LLP
                                             55 West Monroe, Suite 3300
                                             Chicago, Illinois 60603
                                             Telephone:  (312) 346-2222
                                             Fax:  (312) 346-0022
                                             kaw@wexlerwallace.com
                                             eaw@wexlerwallace.com
                                             aek@wexlerwallace.com

                                             *and*

                                             Allen Carney
                                             Randall K. Pulliam
                                             CARNEY WILLIAMS BATES PULLIAM
                                              & BOWMAN, PLLC
                                             11311 Arcade Dr., Suite 200
                                             Little Rock, Arkansas 72212
                                             Telephone:  (501) 312-8500
                                             Fax:  (501) 312-8505

acarney@carneywilliams.com
rpulliam@carneywilliams.com

*and*

Sam Strange
HOSTO & BUCHAN, P.L.L.C.
P.O. Box 3316
Little Rock, Arkansas 72203
Telephone: (501) 320-0259
Fax: (501) 482-0259
sstrange@hosto.com