# EXHIBIT C

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# SCHEDULE 14A

### Proxy Statement Pursuant to Section 14(a) of the
### Securities Exchange Act of 1934

Filed by the Registrant ☒                    Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐ Preliminary Proxy Statement

☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒ Definitive Proxy Statement

☐ Definitive Additional Materials

☐ Soliciting Material Pursuant to §240.14a-12

# ACCRETIVE HEALTH, INC.
### (Name of Registrant as Specified In Its Charter)

_____
### (Name of Person(s) Filing Proxy Statement if Other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒ No fee required.

☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

   (1)   Title of each class of securities to which transaction applies:

      _____

   (2)   Aggregate number of securities to which transaction applies:

      _____

   (3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

      _____

   (4)   Proposed maximum aggregate value of transaction:

      _____

   (5)   Total fee paid:

      _____

☐ Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1)   Amount Previously Paid:

      _____

   (2)   Form, Schedule or Registration Statement No.:

      _____

   (3)   Filing Party:

(4)   Date Filed:

Table of Contents



## NOTICE OF ANNUAL MEETING OF STOCKHOLDERS
### To Be Held on June 3, 2011

The Annual Meeting of Stockholders of Accretive Health, Inc. will be held on Friday, June 3, 2011 at 9:00 a.m., local time, at the Gleacher Center, 450 North Cityfront Plaza Drive, Chicago, Illinois 60611, to consider and act upon the following matters:

    1. Elect three Class I directors, each for a three-year term;

    2. Vote on a non-binding advisory proposal to approve executive compensation;

    3. Vote on a non-binding advisory proposal regarding the frequency of future advisory proposals to approve executive compensation;

    4. Ratify the selection by the Audit Committee of Ernst & Young LLP as our independent registered public accounting firm for the fiscal year ending December 31, 2011; and

    5. Transact such other business as may properly come before the meeting or any adjournment thereof.

Stockholders of record at the close of business on Wednesday, April 20, 2011 are entitled to receive this notice of our Annual Meeting and to vote at the Annual Meeting and at any adjournments of the meeting.

By Order of the Board of Directors,

Mary A. Tolan
*Founder and Chief Executive Officer*

Chicago, Illinois

April 28, 2011

---

**YOUR VOTE IS IMPORTANT**

**IT IS IMPORTANT THAT YOUR SHARES BE REPRESENTED AT THE ANNUAL MEETING. THEREFORE, WHETHER OR NOT YOU EXPECT TO ATTEND THE ANNUAL MEETING, PLEASE SUBMIT YOUR PROXY (1) OVER THE INTERNET, (2) BY TELEPHONE OR (3) BY MAIL. FOR SPECIFIC INSTRUCTIONS, PLEASE REFER TO THE QUESTIONS AND ANSWERS BEGINNING ON PAGE 2 OF THE PROXY STATEMENT AND THE INSTRUCTIONS ON THE PROXY CARD RELATING TO THE ANNUAL MEETING.**

**"STREET NAME" HOLDERS WHO PLAN TO ATTEND THE MEETING WILL NEED TO BRING A COPY OF A BROKERAGE STATEMENT REFLECTING THEIR STOCK OWNERSHIP IN ACCRETIVE HEALTH, INC. AS OF THE RECORD DATE.**

---

# TABLE OF CONTENTS

|  | Page No. |
|---|---|
| INFORMATION ABOUT THE ANNUAL MEETING AND VOTING | 2 |
| What is the purpose of the Annual Meeting? | 2 |
| Who can vote? | 2 |
| What shares will be entitled to vote at the Annual Meeting? | 2 |
| How many votes do I have? | 2 |
| Is my vote important? | 2 |
| How do I vote? | 2 |
| Can I change my vote after I have voted my shares? | 2 |
| Can I vote if my shares are held in "street name"? | 3 |
| What constitutes a quorum? | 3 |
| What vote is required for each item? | 3 |
| How will votes be counted? | 4 |
| Who will count the votes? | 4 |
| How does the board of directors recommend that I vote on the proposals? | 4 |
| Will any other business be conducted at the Annual Meeting or will other matters be voted on? | 4 |
| Where can I find the voting results? | 4 |
| Can I recommend a candidate for Accretive Health's board of directors? | 4 |
| How and when may I submit a stockholder proposal for the 2012 annual meeting? | 5 |
| How can I communicate with Accretive Health's board of directors? | 5 |
| Who bears the costs of soliciting these proxies? | 6 |
| How can I obtain a copy of Accretive Health's Annual Report on Form 10-K? | 6 |
| Whom should I contact if I have any questions? | 6 |
| Householding of Annual Meeting materials | 6 |
| PROPOSAL 1 — ELECTION OF CLASS I DIRECTORS | 6 |
| PROPOSAL 2 — ADVISORY VOTE ON EXECUTIVE COMPENSATION | 7 |
| PROPOSAL 3 — ADVISORY VOTE ON THE FREQUENCY OF FUTURE EXECUTIVE COMPENSATION ADVISORY VOTES | 8 |
| PROPOSAL 4 — RATIFICATION OF THE SELECTION OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM | 9 |
| INFORMATION ABOUT OUR DIRECTORS, OFFICERS AND 5% STOCKHOLDERS | 10 |
| Our Board of Directors | 13 |
| Our Executive Officers | 15 |
| CORPORATE GOVERNANCE | 16 |
| Corporate Governance Guidelines | 16 |
| Board Leadership Structure | 17 |
| Board Determination of Independence | 17 |
| Director Nomination Process | 18 |
| Board Meetings and Attendance | 18 |
| Director Attendance at Annual Meeting of Stockholders | 18 |
| Risk Management | 19 |
| Board Committees | 19 |
| Communicating with the Directors | 21 |
| Code of Business Conduct and Ethics | 21 |
| Report of the Audit Committee of the Board of Directors | 22 |

i

**Table of Contents**

| | Page No. |
|---|---|
| DIRECTOR COMPENSATION | 22 |
| EXECUTIVE COMPENSATION | |
| COMPENSATION DISCUSSION AND ANALYSIS | 24 |
| Overview of Executive Compensation Process | 24 |
| Objectives and Philosophy of Our Executive Compensation Program | 25 |
| Risk Considerations in our Compensation Program | 25 |
| Elements of our Executive Compensation Program | 25 |
| Deductibility of Executive Compensation | 30 |
| Summary Compensation Table | 31 |
| Grants of Plan-Based Awards in 2010 | 31 |
| Outstanding Equity Awards at Year End | 32 |
| Option Exercises and Stock Vested | 32 |
| Potential Payments Upon Termination or Change of Control | 32 |
| Employment Agreements | 33 |
| Confidentiality and Non-Disclosure Agreements | 34 |
| Compensation Committee Report | 34 |
| Compensation Committee Interlocks and Insider Participation | 34 |
| RELATED PERSON TRANSACTIONS | 35 |
| Policies and Procedures for Related Person Transactions | 35 |
| Transactions with Ascension Health | 36 |
| Zimmerman Licensing and Consulting Warrant | 39 |
| Liquidation Preference Payments | 39 |
| Certain Employment Arrangements | 39 |
| Registration Rights | 40 |
| Indemnification | 40 |
| SECTION 16(a) BENEFICIAL OWNERSHIP REPORTING COMPLIANCE | 40 |
| STOCKHOLDER PROPOSALS FOR 2012 ANNUAL MEETING | 40 |
| Stockholder Proposals Included in Proxy Statement | 40 |
| Stockholder Proposals Not Included in Proxy Statement | 40 |
| HOUSEHOLDING OF PROXIES | 42 |
| OTHER MATTERS | 42 |

ii

**Table of Contents**

# ACCRETIVE HEALTH, INC.
### 401 North Michigan Avenue
### Suite 2700
### Chicago, Illinois 60611

## PROXY STATEMENT
## For our 2011 Annual Meeting of Stockholders to be held on June 3, 2011

Accretive Health, Inc. (often referred to as "we" or "us" in this document) is sending you this proxy statement in connection with the solicitation of proxies by our board of directors for use at our 2011 Annual Meeting of Stockholders, which will be held on Friday, June 3, 2011 at 9:00 a.m. at the Gleacher Center, 450 North Cityfront Plaza Drive, Chicago, Illinois 60611. You may obtain directions to the location of the Annual Meeting of Stockholders by contacting our Office of Investor Relations by telephone at 877-252-2170 or by e-mail at investorrelations@accretivehealth.com. If the Annual Meeting is adjourned for any reason, then the proxies may be used at any adjournments of the Annual Meeting.

On or about April 28, 2011, we are mailing these proxy materials together with an annual report, consisting of our Annual Report on Form 10-K for the fiscal year ended December 31, 2010 (the "2010 fiscal year") and other information required by the rules of the Securities and Exchange Commission.

---

**Important Notice Regarding the Availability of Proxy Materials for the Annual Meeting of Stockholders to be Held on June 3, 2011**

**This proxy statement and our 2010 Annual Report are available for viewing, printing and downloading at http://proxyonline.accretivehealth.com**

**You may request a copy of the materials relating to our Annual Meeting, including this proxy statement and form of proxy for our Annual Meeting and our Annual Report on Form 10-K for the fiscal year ended December 31, 2010, at www.accretivehealth.com, or by contacting our Office of Investor Relations by telephone at 877-252-2170 or by e-mail at investorrelations@accretivehealth.com**

**A copy of our Annual Report on Form 10-K for the fiscal year ended December 31, 2010 as filed with the Securities and Exchange Commission, other than exhibits, will be furnished without charge to any stockholder upon written or oral request to:**

**Accretive Health, Inc**
**Attention: Office of Investor Relations**
**401 North Michigan Avenue**
**Suite 2700**
**Chicago, Illinois 60611**
**Telephone: 877-252-2170**

---

Table of Contents

## INFORMATION ABOUT THE ANNUAL MEETING AND VOTING

**What is the purpose of the Annual Meeting?**

At the Annual Meeting, stockholders will consider and vote on the following matters:

1. The election of three Class I directors, each for a three-year term;

2. A non-binding advisory proposal to approve executive compensation;

3. A non-binding advisory proposal on the frequency of future executive compensation advisory votes;

4. The ratification of the selection of Ernst & Young LLP as our independent registered public accounting firm for the year ending December 31, 2011; and

5. The transaction of other business, if any, that may properly come before the Annual Meeting or any adjournment of the meeting.

**Who can vote?**

All stockholders of record at the close of business on Wednesday, April 20, 2011, which we refer to as the record date, are entitled to vote at the Annual Meeting.

**What shares will be entitled to vote at the Annual Meeting?**

Our voting securities consist of common stock, of which 95,900,532 shares were outstanding on the record date. Each share outstanding on the record date is entitled to one vote.

**How many votes do I have?**

Each share of our common stock you owned on the record date entitles you to one vote on each matter that is voted on.

**Is my vote important?**

Your vote is important regardless of how many shares you own. Please take the time to read the instructions below and vote. Choose the method of voting that is easiest and most convenient for you and please cast your vote as soon as possible.

**How do I vote?**

Included with the proxy materials you received is a proxy card or a voting instruction card from your bank, broker or other nominee for the Annual Meeting. The proxy card or voting instruction card contains instructions on how to vote either at our Annual Meeting, over the Internet, by telephone or by mail. If you return the proxy card, but do not give any instructions on a particular matter described in this proxy statement, the shares you own will be voted in accordance with the recommendations of our Board of Directors. The Board of Directors recommends that you vote FOR Proposals 1, 2 and 4 and for every three years on Proposal 3.

If you are a stockholder as of the record date and attend the meeting, you may personally deliver your completed proxy card or vote in person at the meeting.

**Can I change my vote after I have voted my shares?**

Yes. Any proxy may be revoked by a stockholder at any time before it is exercised at the Annual Meeting by delivering to our corporate secretary a written notice of revocation or a duly executed proxy bearing a later date, or by voting in person at the meeting.

2

**Can I vote if my shares are held in "street name"?**

If the shares you own are held in "street name" by a bank or brokerage firm, your bank or brokerage firm, as the record holder of your shares, is required to vote your shares according to your instructions. In order to vote your shares, you will need to follow the directions your bank or brokerage firm provides you. Many banks and brokerage firms also offer the option of voting over the Internet or by telephone, instructions for which would be provided by your bank or brokerage firm on your vote instruction form. Under New York Stock Exchange, or NYSE, rules applicable to banks and brokerage firms, if you do not give instructions to your bank or brokerage firm, it will still be able to vote your shares with respect to certain "discretionary" items, but will not be allowed to vote your shares with respect to certain "non-discretionary" items. In the case of non-discretionary items, the shares will be treated as "broker non-votes." "Broker non-votes" are shares that are held in "street name" by a bank or brokerage firm that indicates on its proxy that it does not have discretionary authority to vote on a particular matter. Proposal 4 is a discretionary item under these rules, and accordingly, your bank or brokerage firm will be able to vote your shares if you do not give instructions on how to do so. The election of directors in Proposal 1 is a "non-discretionary" item. Thus, if you hold your shares in street name and you do not instruct your bank, broker, or other nominee how to vote in the election of directors in Proposal 1, no votes will be cast on your behalf. Similarly, Proposals 2 and 3 are non-discretionary items; therefore, no votes will be cast on your behalf for these proposals if you hold your shares in street name unless you instruct your bank, broker or other nominee how to vote in these non-binding advisory proposals.

If your shares are held in street name, you must bring an account statement or letter from your brokerage firm or bank showing that you are the beneficial owner of the shares as of the record date in order to be admitted to the meeting on June 3, 2011. To be able to vote your shares held in street name at the meeting, you will need to obtain a proxy card from the holder of record.

**What constitutes a quorum?**

In order for business to be conducted at the meeting, a quorum must be present. For the election of our class I directors, the non-binding advisory vote on executive compensation, the non-binding advisory vote on the frequency of future executive compensation advisory votes and ratification of the selection of our independent registered public accounting firm, a quorum consists of the holders of a majority of the common stock issued and outstanding and entitled to vote at the meeting, present or represented by proxy. A quorum, once established at a meeting, shall not be broken by the withdrawal of enough votes to leave less than a quorum.

Shares of our common stock represented in person or by proxy (including broker non-votes and shares that abstain or do not vote with respect to one or more of the matters to be voted upon) will be counted for the purpose of determining whether a quorum exists.

If a quorum is not present, the meeting will be adjourned until a quorum is obtained.

**What vote is required for each item?**

*Election of class I directors.* The nominees for our class I directors receiving a plurality of the votes cast by holders of our common stock at the meeting in person or by proxy, shall be elected to our board of directors as our class I directors.

*Non-binding advisory vote to approve executive compensation.* The affirmative vote of the holders of a majority of shares of common stock voted at the meeting, in person or by proxy, is required to approve the proposal on executive compensation.

*Non-binding advisory vote on the frequency of future executive compensation advisory votes.* The affirmative vote of the holders of a majority of shares of common stock voted at the meeting, in person or by proxy, is required to approve one of the three frequency options under the advisory vote on the frequency of future executive compensation advisory votes. If none of the three frequency options receives the vote of the holders of a majority of the votes cast, we will consider the frequency option (one year, two years or three

3

Table of Contents

years) receiving the highest number of votes cast by stockholders to be the frequency that has been recommended by stockholders. However, as described in more detail in Proposal 3, because this proposal is non-binding, the Board of Directors may decide that it is in the best interest of our stockholders and the company to hold future executive compensation advisory votes more or less frequently.

*Ratification of the selection of our independent registered public accounting firm.* The affirmative vote of the holders of a majority of shares of common stock voted at the meeting, in person or by proxy, is required for ratification of the selection of our independent registered public accounting firm.

**How will votes be counted?**

Each share of common stock is entitled to one vote, whether voted by a proxy or by a ballot voted in person at the meeting. Shares will not be voted in favor of a matter, and will not be counted as voting on a particular matter, if either (1) the holder of the shares abstains from voting on the matter or (2) the shares are broker non-votes, described below. As a result, abstentions and broker non-votes will have no effect on the outcome of voting at the meeting.

If you hold shares of common stock through a broker, bank or other representative, generally the broker, bank or representative may only vote the common stock in accordance with your instructions. However, if your representative does not timely receive instructions, your representative may only vote on those matters for which it has discretionary voting authority. If your representative cannot vote on a particular matter because it does not have discretionary voting authority, this is a "broker non-vote" on that matter.

**Who will count the votes?**

Broadridge Financial Solutions will count, tabulate and certify the votes. A representative of Broadridge Financial Solutions will serve as the inspector of elections at the meeting.

**How does the board of directors recommend that I vote on the proposals?**

Our board of directors recommends that you vote:

• FOR the election of the class I director nominees listed below;

• FOR the non-binding advisory vote to approve executive compensation;

• FOR the election of three year frequency for the non-binding advisory vote of future executive compensation advisory votes; and

• FOR the ratification of the selection of our independent registered public accounting firm.

**Will any other business be conducted at the Annual Meeting or will other matters be voted on?**

We are not aware of any other business to be conducted or matters to be voted upon at the meeting. Under our bylaws, the deadline for stockholders to notify us of any proposals or nominations for director to be presented for action at the annual meeting is May 8, 2011. If any other matter properly comes before the meeting, the persons named in the proxy card that accompanies this proxy statement will exercise their judgment in deciding how to vote, or otherwise act, at the meeting with respect to that matter or proposal.

**Where can I find the voting results?**

We will report the voting results from the Annual Meeting in a Current Report on Form 8-K, which we expect to file with the Securities and Exchange Commission, or the SEC, within four business days after the Annual Meeting.

**Can I recommend a candidate for Accretive Health's board of directors?**

Yes. Stockholders may recommend director candidates for consideration by the nominating and corporate governance committee of our board of directors by submitting the stockholder's name, address and number of

4

Table of Contents

shares of our stock held, as well as any other information required by our bylaws, the candidate's name, age, address and resume to our corporate secretary at the address below. If a stockholder would like a candidate to be considered for inclusion in the proxy statement for our 2012 annual meeting, then the stockholder must follow the procedures for stockholder proposals outlined immediately below under "How and when may I submit a stockholder proposal for the 2012 annual meeting?" You can find more detailed information on our process for selecting board members and our criteria for board nominees in the section of this proxy statement entitled "Board Committees — Nominating and Corporate Governance Committee" and in the Corporate Governance Guidelines posted in the "Corporate Governance" section of the "Investor Relations" page of our website, www.accretivehealth.com.

**How and when may I submit a stockholder proposal for the 2012 annual meeting?**

If you are interested in submitting a proposal or information about a proposed director candidate for inclusion in the proxy statement for our 2012 annual meeting, you must follow the procedures outlined in Rule 14a-8 under the Securities Exchange Act of 1934, which we refer to as the Exchange Act. To be eligible for inclusion, we must receive your stockholder proposal or information about your proposed director candidate at the address noted below no later than December 3, 2011.

If you wish to present a proposal or a proposed director candidate at the 2012 annual meeting of stockholders, but do not wish to have the proposal or director candidate considered for inclusion in the proxy statement and proxy card, you must also give written notice to us at the address noted below. We must receive this required notice no later than March 5, 2012, but no sooner than February 4, 2012. However, if the date of the 2012 annual meeting is held before May 14, 2012 or after August 2, 2012, then we must receive the required notice of a proposal or proposed director candidate no earlier than the 120th day prior to the 2012 annual meeting and no later than the close of business on the later of (1) the 90th day prior to the 2012 annual meeting and (2) the 10th day following the date on which notice of the date of the meeting was mailed or public disclosure was made, whichever occurs first.

Any proposals, notices or information about proposed director candidates should be sent to:

Accretive Health, Inc.
401 North Michigan Avenue
Suite 2700
Chicago, Illinois 60611
Attention: Corporate Secretary

**How can I communicate with Accretive Health's board of directors?**

Our board of directors will give appropriate attention to written communications that are submitted by stockholders, and will respond if and as appropriate. The chairman of the nominating and corporate governance committee, with the assistance of our senior management, is primarily responsible for monitoring and responding to communications from stockholders and other interested parties and for providing copies or summaries of communications to the other directors, as he considers appropriate.

All communications are forwarded to the chairman of the nominating and corporate governance committee and to the chairman of another committee of the board of directors, if the communication was addressed to the attention of another committee of the board of directors. The chairman of the nominating and corporate governance committee, in consultation, in the case of communications to be addressed by another committee of the board of directors, with the chairman of that committee, shall decide in each case whether any particular communication should be forwarded to some or all other members of the board of directors.

Our stockholders may send communications to our board of directors by forwarding them addressed to our corporate secretary, our board of directors or, in the case of matters concerning accounting, internal accounting controls and auditing, our audit committee, at the above address.

5

Table of Contents

### Who bears the costs of soliciting these proxies?

We will bear the costs of soliciting proxies. In addition to solicitations by mail, our directors, officers and regular employees may, without additional pay, solicit proxies by telephone, facsimile, e-mail and personal interviews. We will also request brokerage houses, custodians, nominees and fiduciaries to forward copies of the proxy materials to the persons for whom they hold shares and request instructions for voting the proxies. We will reimburse the brokerage houses and other persons for their reasonable expenses in connection with this distribution.

### How can I obtain a copy of Accretive Health's Annual Report on Form 10-K?

Our Annual Report on Form 10-K is available in the "SEC Filings" section of the "Investor Relations" page of our website at www.accretivehealth.com. Alternatively, if you would like us to send you a copy of our Annual Report on Form 10-K (without exhibits), without charge, please contact:

Accretive Health, Inc.
401 North Michigan Avenue
Suite 2700
Chicago, Illinois 60611
Attention: Investor Relations
Telephone: 877-252-2170
investorrelations@accretivehealth.com

If you would like us to send you a copy of the exhibits listed on the exhibit index of our Annual Report on Form 10-K, we will do so upon your payment of our reasonable expenses in furnishing a requested exhibit.

### Whom should I contact if I have any questions?

If you have any questions about the Annual Meeting or your ownership of our common stock, please contact our Office of Investor Relations at the address, telephone number or e-mail address listed above.

### Householding of Annual Meeting materials

Some banks, brokers and other nominee record holders may be participating in the practice of "householding" proxy statements and annual reports. This means that only one copy of our proxy statement and annual report to stockholders may have been sent to multiple stockholders in your household. We will promptly deliver a separate copy of either document to you if you call or write our investor relations department at the address, telephone number or e-mail address listed above. If you want to receive separate copies of our proxy statement or annual report to stockholders in the future, or if you are receiving multiple copies and would like to receive only one copy per household, you should contact your bank, broker or other nominee record holder.

## PROPOSAL 1 — ELECTION OF CLASS I DIRECTORS

Our board of directors is currently authorized to have nine members. Our directors are divided into three classes, with one class being elected each year and members of each class holding office for a three-year term. We have three class II directors whose term expires at our 2012 annual meeting of stockholders, three class III directors whose term expires at our 2013 annual meeting of stockholders and three class I directors whose term expires at this Annual Meeting of stockholders.

At this Annual Meeting, our stockholders will have an opportunity to vote for three nominees for class I directors: Mary A. Tolan, J. Michael Cline and Denis J. Nayden. Ms. Tolan and Messrs. Cline and Nayden are currently members of our board of directors, and you can find more information about them in the section of this proxy statement entitled "INFORMATION ABOUT OUR DIRECTORS, OFFICERS AND 5% STOCKHOLDERS — Our Board of Directors."

6

Table of Contents

If elected, Ms. Tolan and Messrs. Cline and Nayden will hold office until the 2014 annual meeting of stockholders and until her or his successor is elected and qualified. Ms. Tolan and Messrs. Cline and Nayden have indicated their willingness to serve if elected. However, if any of them should be unable to serve, proxies may be voted for substitute nominees nominated by our board of directors, or our board of directors may reduce the number of directors.

**Our board of directors recommends a vote FOR the nominees for class I directors.**

### PROPOSAL 2 — ADVISORY VOTE ON EXECUTIVE COMPENSATION

We are providing our stockholders the opportunity to vote to approve, on an advisory, non-binding basis, the compensation of the executive officers named in the Summary Compensation Table under "Executive Compensation" below, who we refer to as our "named executive officers," as disclosed in this proxy statement in accordance with the SEC's rules. This proposal, which is commonly referred to as "say-on-pay," is required by the recently enacted Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, which added Section 14A to the Exchange Act. Section 14A of the Exchange Act also requires that stockholders have the opportunity to cast an advisory vote with respect to whether future executive compensation advisory votes will be held every one, two or three years, which is the subject of Proposal 3.

Our executive compensation programs are designed to attract, motivate, and retain high quality executives, who are critical to our success. Under these programs, our named executive officers are rewarded for the achievement of our short and long-term financial and strategic goals and for driving corporate financial performance and stability. The programs contain elements of cash and equity-based compensation and are designed to align the interests of our executives with those of our stockholders.

The "Compensation Discussion and Analysis" and the "Executive Compensation" sections of this proxy statement, beginning on page 24, describe in detail our executive compensation programs and the decisions made by the compensation committee with respect to the year ended December 31, 2010. Highlights of our executive compensation program include the following:

Our primary objective with respect to executive compensation is to attract, retain and motivate highly talented individuals who have the breadth and experience to successfully execute our business strategy. Our executive compensation program is designed to:

- reward the achievement of our annual and long-term operating and strategic goals;

- recognize individual contributions; and

- align the interests of our executives with those of our stockholders by rewarding performance that meets or exceeds established goals, with the ultimate objective of increasing stockholder value.

To achieve these objectives, our executive compensation program ties a portion of each executive's overall compensation to key corporate financial goals, primarily adjusted EBITDA targets, as well as to individual performance. We also provide a portion of our executive compensation in the form of equity incentive awards that vest over time, which we believe helps to retain our executive officers and aligns their interests with those of our stockholders by allowing them to participate in our long-term performance as reflected in the trading price of shares of our common stock.

As we describe in the Compensation Discussion and Analysis, our executive compensation program embodies a pay-for-performance philosophy that supports our business strategy and aligns the interests of our executives with our stockholders. The Board believes this link between compensation and the achievement of our short and long-term business goals has helped drive our performance over time. At the same time, we believe our program does not encourage excessive risk-taking by management.

Table of Contents

Our board of directors is asking stockholders to approve a non-binding advisory vote on the following resolution:

RESOLVED, that the compensation paid to the company's named executive officers, as disclosed pursuant to the compensation disclosure rules of the Securities and Exchange Commission, including the compensation discussion and analysis, the compensation tables and any related material disclosed in this proxy statement, is hereby approved.

As an advisory vote, this proposal is not binding. Neither the outcome of this advisory vote nor of the advisory vote included in Proposal 3 overrules any decision by the company or the board of directors (or any committee thereof), creates or implies any change to the fiduciary duties of the company or the board of directors (or any committee thereof), or creates or implies any additional fiduciary duties for the company or the board of directors (or any committee thereof). However, our compensation committee and board of directors value the opinions expressed by our stockholders in their vote on this proposal and will consider the outcome of the vote when making future compensation decisions for named executive officers.

**Our board of directors recommends that stockholders vote to approve the compensation of our named executive officers by voting "FOR" Proposal 2.**

### PROPOSAL 3 — ADVISORY VOTE ON THE FREQUENCY OF FUTURE EXECUTIVE COMPENSATION ADVISORY VOTES

In Proposal 2, we are providing our stockholders the opportunity to vote to approve, on an advisory, non-binding basis, the compensation of our named executive officers. In this Proposal 3, we are asking our stockholders to cast a non-binding advisory vote regarding the frequency of future executive compensation advisory votes. Stockholders may vote for a frequency of every one, two, or three years, or may abstain.

The board of directors will take into consideration the outcome of this vote in making a determination about the frequency of future executive compensation advisory votes. However, because this vote is advisory and non-binding, the board of directors may decide that it is in the best interests of our stockholders and the company to hold the advisory vote to approve executive compensation more or less frequently. In the future, we will propose an advisory vote on the frequency of the executive compensation advisory vote at least once every six calendar years.

After careful consideration, the board of directors believes that the executive compensation advisory vote should be held every three years, and therefore our Board of Directors recommends that you vote for a frequency of every THREE YEARS for future executive compensation advisory vote.

The board of directors believes that a once every three years, or triennial, executive compensation advisory vote will allow our stockholders to evaluate executive compensation on a more thorough, long-term basis than a more frequent vote. Consistent with our view that our executive compensation program should serve as an incentive and retention tool, we take a long-term view of executive compensation and encourage our stockholders to do the same. As described in "Compensation Discussion and Analysis," our compensation program emphasizes multi-year individual and company performance. Too-frequent executive compensation advisory votes may encourage short-term analysis of executive compensation. Annual or biennial executive compensation advisory votes also may not allow stockholders sufficient time to evaluate the effect of changes we make to executive compensation.

A triennial vote will also give our board of directors sufficient time to engage with stockholders to better understand their views about executive compensation and respond effectively to their concerns. Independent of the timing of the executive compensation advisory vote, we encourage stockholders to contact the board of directors at any time to provide feedback about corporate governance and executive compensation matters.

**Therefore, the board of directors believes that holding the executive compensation advisory vote every three years is in the best interests of the company and its stockholders and recommends voting for a frequency of every "THREE YEARS".**

8

Table of Contents

## PROPOSAL 4 — RATIFICATION OF THE SELECTION OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

The audit committee of our board of directors has selected Ernst & Young LLP as our independent registered public accounting firm for the year ending December 31, 2011. Although stockholder approval of the audit committee's selection of Ernst & Young is not required by law, we believe that it is important to give stockholders an opportunity to ratify this selection. If our stockholders do not ratify this selection, then our audit committee will reconsider the selection. We expect that a representative of Ernst & Young LLP, which served as our independent registered public accounting firm for the year ended December 31, 2010, will be present at the Annual Meeting to respond to appropriate questions and make a statement if he or she wishes.

**Our board of directors recommends a vote FOR the ratification of the selection of our independent registered public accounting firm.**

Ernst & Young LLP billed to us a total of $1,242,461 for professional services rendered for the year ended December 31, 2010 and $1,270,622 for professional services rendered for the year ended December 31, 2009. The following table provides information about these fees.

| Fee Category | Fiscal 2010 | Fiscal 2009 |
|---|---|---|
| Audit Fees | $1,198,685 | $1,140,428 |
| Audit-Related Fees | $ 15,000 | $ 25,000 |
| Tax Fees | $ 26,781 | $ 103,234 |
| All Other Fees | $ 1,995 | $ 1,960 |
| Total Fees | $1,242,461 | $1,270,622 |

*Audit Fees.* Audit fees consisted of fees for the audit of our annual consolidated financial statements, the review of the interim consolidated financial statements, subsidiary audits and other professional services provided in connection with our filings with the SEC. Audit fees also include $617,292 and $705,055 in fiscal 2010 and 2009, respectively, for professional services provided in connection with our initial public offering completed in May 2010.

*Audit-Related Fees.* Audit-related fees consisted of fees for internal control reviews.

*Tax Fees.* Tax fees consisted of fees for tax compliance and related regulatory filings.

*All Other Fees.* All other fees consisted of a subscription for access to an accounting research tool.

The audit committee of our board of directors believes that the non-audit services described above did not compromise Ernst & Young LLP's independence. The audit committee's charter, which you can find in the "Corporate Governance" section of the "Investor Relations" page of our website, www.accretivehealth.com, requires that all proposals to engage Ernst & Young LLP for services, and all proposed fees for these services, be submitted to the audit committee for approval before Ernst & Young LLP may provide the services. None of the above fees were approved using the "de minimis exception" under SEC rules.

### Pre-Approval of Audit and Non-Audit Services

Our audit committee has adopted policies and procedures relating to the approval of all audit and non-audit services that are to be performed by our registered public accounting firm. This policy generally provides that we will not engage our registered public accounting firm to render audit or non-audit services unless the service is specifically approved in advance by our audit committee.

From time to time, our audit committee may pre-approve specified types of services that are expected to be provided to us by our registered public accounting firm during the next 12 months. Any such pre-approval is detailed as to the particular service or type of services to be provided and is also generally subject to a maximum dollar amount. Our audit committee pre-approved all of the services described under the headings "Audit-Related Fees," "Tax Fees" and "All Other Fees" above.

9

Table of Contents

## INFORMATION ABOUT OUR DIRECTORS, OFFICERS AND 5% STOCKHOLDERS

**Security Ownership of Certain Beneficial Owners and Management**

The following table contains information as of April 20, 2011 about the beneficial ownership of shares of our common stock by:

- each person, or group of affiliated persons, who is known by us to beneficially own more than 5% of our common stock;

- each of our directors and nominees for director;

- each of our named executive officers; and

- all of our directors and executive officers as a group.

For purposes of the table below, and in accordance with the rules of the SEC, we deem shares of common stock subject to options that are currently exercisable or exercisable within 60 days of April 20, 2011 to be outstanding and beneficially owned by the person holding the options for the purpose of computing the percentage ownership of that person, but we do not treat them as outstanding for the purpose of computing the percentage ownership of any other person. As of April 20, 2011, there were 95,900,532 shares of our common stock outstanding. Except as otherwise noted, the persons or entities in this table have sole voting and investment power with respect to all of the shares of common stock beneficially owned by them, subject to community property laws, where applicable. Except as otherwise set forth below, the street address of the beneficial owner is c/o Accretive Health, Inc., 401 North Michigan Avenue, Suite 2700, Chicago, Illinois 60611.

| Name | Common Stock Beneficially Owned | |
|---|---|---|
| | Shares | % |
| *5% Stockholders* | | |
| Accretive Investors SBIC, L.P.(1) | 18,560,545 | 19.4% |
| FW Oak Hill Accretive Healthcare Investors, L.P.(2) | 14,036,172 | 14.6% |
| FMR, LLC(3) | 9,875,764 | 10.3% |
| Ascension Health(4) | 6,942,349 | 7.2% |
| *Directors and Officers* | | |
| Mary A. Tolan(5) | 13,739,988 | 14.2% |
| John T. Staton(6) | 1,545,636 | 1.6% |
| Etienne H. Deffarges(7) | 5,233,478 | 5.4% |
| Gregory N. Kazarian(8) | 1,289,125 | 1.3% |
| Edgar M. Bronfman, Jr.(9) | 60,186 | * |
| J. Michael Cline(10) | 18,623,371 | 19.4% |
| Steven N. Kaplan(11) | 451,467 | * |
| Stanley N. Logan(12) | 2,061 | * |
| Denis J. Nayden(13) | 111,505 | * |
| George P. Shultz(14) | 749,677 | * |
| Arthur H. Spiegel, III(15) | 3,779,053 | 3.9% |
| Mark A. Wolfson(16) | 60,186 | * |
| All executive officers and directors as a group (12 persons)(17) | 45,645,733 | 45.9% |

* Less than 1%

(1) Accretive Associates SBIC, LLC is the general partner of Accretive Investors SBIC, L.P. Mr. Cline is the managing member of Accretive Associates SBIC, LLC, and may be deemed to have sole voting and investment power with respect to the shares held by Accretive Investors SBIC, L.P. The address of Accretive Investors SBIC, L.P. is c/o Accretive, LLC, 51 Madison Avenue, 31st Floor, New York, New York 10010.

10

**Table of Contents**

(2) Group VI 31, L.L.C. is the general partner of FW Oak Hill Accretive Healthcare Investors, L.P. (the "Oak Hill Partnership"). The sole member of Group VI 31, L.L.C. is J. Taylor Crandall, who disclaims beneficial ownership of such shares, except to the extent of his pecuniary interest therein. J. Taylor Crandall exercises voting and investment power with respect to such shares. Messrs. Nayden and Wolfson, who serve on our board of directors, are limited partners of the Oak Hill Partnership, and Mr. Wolfson is a Vice President and Assistant Secretary of Group VI 31, L.L.C. Neither Mr. Nayden nor Mr. Wolfson is deemed to have voting or investment power with respect to any shares held by the Oak Hill Partnership by virtue of their roles as limited partners of the Oak Hill Partnership or, in the case of Mr. Wolfson, by virtue of his position with Group VI 31, L.L.C. The address of the Oak Hill Partnership is 201 Main Street, Suite 3100, Fort Worth, Texas 76102.

(3) According to a Schedule 13G filed with the SEC on March 10, 2011, FMR LLC reports sole voting power over 119,880 shares and sole investment power over 9,875,764 shares. Fidelity OTC Portfolio, an investment company registered under the Investment Company Act of 1940, has the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, 6,588,555 of the shares. Fidelity Management & Research Company ("Fidelity"), a wholly-owned subsidiary of FMR LLC and an investment adviser registered under Section 203 of the Investment Advisers Act of 1940, is the beneficial owner of 9,755,884 of the shares as a result of acting as investment adviser to various investment companies registered under Section 8 of the Investment Company Act of 1940. Edward C. Johnson and FMR LLC, through their control of Fidelity, and the funds each have sole investment power over the 9,755,884 shares beneficially owned by Fidelity. Members of the family of Edward C. Johnson 3d, chairman of FMR LLC, are the predominant owners, directly or through trusts, of Series B voting common shares of FMR LLC, representing 49% of the voting power of FMR LLC. The Johnson family group and all other FMR LLC Series B stockholders have entered into a stockholders' voting agreement under which all Series B voting shares will be voted in accordance with the majority vote of Series B voting common shares. Accordingly, through their ownership of voting common shares and the execution of the shareholders' voting agreement, members of the Johnson family may be deemed, under the Investment Company Act of 1940, to form a controlling group with respect to FMR LLC. Neither FMR LLC nor Edward C. Johnson 3d has the sole voting power or investment power over the shares owned directly by the Fidelity Funds, which powers reside with the funds' board of trustees. Fidelity carries out the voting of the shares under written guidelines established by the funds' boards of trustees. The address of each of FMR LLC, Fidelity OTC Portfolio and Fidelity is 82 Devonshire Street, Boston, Massachusetts 02109.

(4) Ascension Health is a Missouri not-for-profit corporation. Anthony J. Speranzo, Ascension Health's senior vice president and chief financial officer, and Matthew I. Herman, Ascension Health's vice president, have shared voting and investment power with respect to the shares held by Ascension Health. Messrs. Speranzo and Herman disclaim beneficial ownership of such shares. The address of Ascension Health is 4600 Edmundson Road, St. Louis, Missouri 63134.

(5) Includes 2,587,200 shares held by Tolan Family Trust U/A/D 6/29/03, John G. Tolan and Margaret A. Coughlin as Trustees, and 646,800 shares held by Tolan Gamma Trust U/A/D 12/31/06, Angie Selden and John G. Tolan, as Co-Trustees. Members of Ms. Tolan's immediate family are beneficiaries of the trusts and share voting and investment power with respect to the shares held by these trusts. Also includes 1,176,000 shares subject to options exercisable within 60 days of April 20, 2011 (of which 294,000 shares would be vested if purchased upon exercise of these options as of April 20, 2011).

(6) Consists of 169,046 shares held by John T. Staton 2009 Grantor Retained Annuity Trust, 144,554 shares held by John T. Staton 2010 Grantor Retained Annuity Trust and 1,232,036 shares subject to options exercisable within 60 days of April 20, 2011 (of which 893,936 shares would be vested if purchased upon exercise of these options as of April 20, 2011). The beneficiaries of John T. Staton Declaration of Trust, John T. Staton 2009 Grantor Retained Annuity Trust and John T. Staton 2010 Grantor Retained Annuity Trust are members of Mr. Staton's immediate family. Mr. Staton is the trustee of such trusts and exercises sole voting and investment power with respect to the shares held by the trusts.

(7) Includes 4,723,878 shares held by The Deffarges-Brass Family Trust and 382,200 shares subject to options exercisable within 60 days of April 20, 2011. The beneficiaries of The Deffarges-Brass Family Trust are members of Mr. Deffarges' immediate family. Mr. Deffarges and his wife are the trustees of the trust and share voting and investment power with respect to the shares held by the trust.

11

**Table of Contents**

(8) Includes 545,468 shares held by the Irrevocable 2009 Gregory N. Kazarian Trust, 353,717 shares held by the Irrevocable 2009 Kazarian Children's Trust, 100,218 shares held by Kazarian Family LLC and 282,240 shares subject to options exercisable within 60 days of April 20, 2011 (of which 70,560 shares would be vested if purchased upon exercise of these options as of April 20, 2011). The beneficiaries of the trusts are members of Mr. Kazarian's immediate family. Mr. Kazarian's wife and sister are the trustees of the Irrevocable 2009 Gregory N. Kazarian Trust and share voting and investment power with respect to the shares held by the trust. Gregory S. Davis is the trustee of the Irrevocable 2009 Kazarian Children's Trust and exercises sole voting and investment power with respect to the shares held by the trust. Mr. Davis disclaims beneficial ownership of such shares. Mr. Kazarian is the manager member of Kazarian Family LLC.

(9) Consists of 60,186 shares subject to options exercisable within 60 days of April 20, 2011 (of which 20,987 shares would be vested if purchased upon exercise of these options as of April 20, 2011). Mr. Bronfman is a member of Accretive Associates SBIC, LLC, which is the general partner of Accretive Investors SBIC, L.P., but exercises no voting or investment power with respect to the shares held by Accretive Investors SBIC, L.P. Mr. Bronfman disclaims beneficial ownership of the shares held by Accretive Investors SBIC, L.P.

(10) Consists of the shares described in note 1 above and 62,826 shares subject to options exercisable within 60 days of April 20, 2011 (of which 23,627 shares would be vested if purchased upon exercise of these options as of April 20, 2011). Mr. Cline is the managing member of Accretive Associates SBIC, LLC, which is the general partner of Accretive Investors SBIC, L.P. and, as such, may be deemed to have sole voting and investment power with respect to the shares described in note 1 above.

(11) Includes 62,826 shares subject to options exercisable within 60 days of April 20, 2011 (of which 23,627 shares would be vested if purchased upon exercise of these options as of April 20, 2011).

(12) Consists of 2,000 shares held in an investment retirement account for the benefit of Mr. Logan and his spouse, over which Mr. Logan has shared voting and investment power; 41 shares held jointly by Mr. Logan and his spouse, over which Mr. Logan has shared voting and investment power; and 20 shares held jointly by Mr. Logan and his daughter as custodians for Mr. Logan's minor grandchild, over which Mr. Logan has shared voting and investment power.

(13) Includes 61,505 shares subject to options exercisable within 60 days of April 20, 2011 (of which 22,306 shares would be vested if purchased upon exercise of these options as of April 20, 2011). Mr. Nayden is not deemed to have voting or investment power with respect to any shares held by the Oak Hill Partnership as a limited partner. See note 2 above.

(14) Consists of 688,172 shares held by The Shultz 1989 Family Trust, of which Mr. Shultz and his wife are the beneficiaries and 61,505 shares subject to options exercisable within 60 days of April 20, 2011 (of which 22,306 shares would be vested if purchased upon exercise of these options as of April 20, 2011). George T. Argyris is the trustee for the trust and exercises sole voting and investment power with respect to the shares held by the trust. Mr. Argyris disclaims beneficial ownership of such shares.

(15) Consists of 3,718,867 shares held by Spiegel Family LLC, the members of which are members of Mr. Spiegel's immediate family and 60,186 shares subject to options exercisable within 60 days of April 20, 2011 (of which 20,987 shares would be vested if purchased upon exercise of these options as of April 20, 2011). Mr. Spiegel and his wife are the managing members of Spiegel Family LLC and exercise shared voting and investment power with respect to such shares.

(16) Consists of 60,186 shares subject to options exercisable within 60 days of April 20, 2011 (of which 20,987 shares would be vested if purchased upon exercise of these options as of April 20, 2011). Mr. Wolfson is not deemed to have voting or investment power with respect to any shares held by the Oak Hill Partnership as a limited partner or as a Vice President or Assistant Secretary of Group VI 31, L.L.C. See note 2 above.

(17) Does not include the shares described in note 2 above. Includes 3,629,096 shares subject to options exercisable within 60 days of April 20, 2011 (of which 1,540,725 shares would be vested if purchased upon exercise of these options as of April 20, 2011).

12

**Table of Contents**

### Our Board of Directors

Set forth below is information about each member of our board of directors, including the nominees for election as our class I directors. This information includes each director's age as of the date of this proxy statement and length of service as a director of our company, his or her principal occupation and business experience for at least the past five years and the names of other publicly held companies of which he or she serves as a director. There are no family relationships among any of our directors, nominees for director and executive officers.

#### Nominees for Class I Directors With Term Expiring in 2014 (Class I Directors)

*Mary A. Tolan.* Age 50. Ms. Tolan, a founder of Accretive Health, has served as our president and chief executive officer and a director since November 2003. Prior to joining our company, Ms. Tolan spent 21 years at Accenture Ltd, a leading global management consulting, technology services and outsourcing company. At Accenture, Ms. Tolan served in several leadership roles, including group chief executive for the resources operating group that had approximately $2 billion in annual revenue, and as a member of Accenture's executive committee and management committee. She serves on the board of trustees of the University of Chicago, Loyola University and the Lyric Opera of Chicago. We believe Ms. Tolan is qualified to serve as a director because of her leadership experience, skill and depth of understanding of our business and market gained from serving as our chief executive officer and by founding our company. Further, Ms. Tolan's experience as a director of both public and private companies provides her with sharp business acumen, financial expertise and deep experience providing strategic guidance to complex organizations.

*J. Michael Cline.* Age 51. Mr. Cline, a founder of Accretive Health, has been a member of our board of directors since August 2003 and has served as chairman of the board since July 2009. Mr. Cline has served as the founding managing partner of Accretive, LLC, a private equity firm, since founding that firm in December 1999. From 1989 to 1999, Mr. Cline served as a general partner of General Atlantic Partners, LLC, a private equity firm. Mr. Cline serves on the boards of several privately-held companies. He also serves on the advisory board of the Harvard Business School Rock Center for Entrepreneurship, on the board of the National Fish and Wildlife Foundation and as a trustee of Panthera, an organization devoted to the preservation of the world's wild cat species where he also chairs Panthera's Tigers Forever initiative. We believe Mr. Cline's career in private equity investing, his experience as a director of public and private companies, and his experience as a founder of our company provide him with sharp business acumen, financial expertise and deep experience providing strategic guidance to complex organizations.

*Denis J. Nayden.* Age 57, Mr. Nayden has been a member of our board of directors since October 2003 and served as co-chairman of our board until July 2009. Mr. Nayden has served as a managing partner of Oak Hill Capital Management, LLC, a private equity firm, since 2003. From 2000 to 2002, he was chairman and chief executive officer of GE Capital Corporation, the financing unit of General Electric Company, and prior to that had a 25-year tenure at General Electric. Mr. Nayden is a director of Genpact Limited, a publicly-held global provider of business process services; RSC Holdings Inc., a publicly-held equipment rental provider; and several privately-held companies. He also serves on the board of trustees of the University of Connecticut. We believe Mr. Nayden's experience as chief executive of several large organizations, his experience in private equity investing and his experience as a director of public and private companies qualify him to serve on our board.

#### Directors Whose Terms Expire in 2012 (Class II Directors)

*Edgar M. Bronfman, Jr.* Age 55. Mr. Bronfman has been a member of our board of directors since October 2006. Mr. Bronfman has served as chairman and chief executive officer of Warner Music Group since March 2004. Before joining Warner Music Group, Mr. Bronfman served as chairman and chief executive officer of Lexa Partners LLC, a management venture capital group which he founded in April 2002. Mr. Bronfman was vice chairman of the board of directors of Vivendi Universal, S.A. from December 2000 until December 2003 and also served as an executive officer of Vivendi from December 2000 until December 2001. Prior to the formation of Vivendi, Mr. Bronfman served as president and chief executive

13

Table of Contents

officer of The Seagram Company Ltd. from June 1994 until December 2000 and as president and chief operating officer of Seagram from 1989 until June 1994. Mr. Bronfman is a director of IAC/InterActiveCorp, a publicly-held operator of Internet businesses. Mr. Bronfman is also a member of the board of trustees of the New York University Medical Center and the board of governors of the Joseph H. Lauder Institute of Management and International Studies at the University of Pennsylvania. He also is a general partner of Accretive, LLC, a private equity firm. We believe Mr. Bronfman's experience as chief executive of several large organizations, his experience in venture capital and private equity investing and his experience as a director of public and private companies qualify him to serve on our board.

APPAC, a minority shareholder group of Vivendi Universal, initiated an inquiry in the Paris Court of Appeal into various issues relating to Vivendi, including Vivendi's financial disclosures, the appropriateness of executive compensation, and trading in Vivendi stock by certain individuals previously associated with Vivendi. The inquiry has encompassed certain trading by Mr. Bronfman in Vivendi stock. Several individuals, including Mr. Bronfman and the former CEO, CFO and COO of Vivendi, had been given the status of "mis en examen" in connection with the inquiry. Although there is no equivalent to "mis en examen" in the U.S. system of jurisprudence, it is a preliminary stage of proceedings that does not entail any filing of charges. In January 2009, the Paris public prosecutor formally recommended that no charges be filed and that Mr. Bronfman not be referred for trial. On October 22, 2009, the investigating magistrate rejected the prosecutor's recommendation and released an order referring for trial Mr. Bronfman and six other individuals, including the former CEO, CFO and COO of Vivendi. While the inquiry encompassed various issues, Mr. Bronfman was referred for trial solely with respect to certain trading in Vivendi stock. In June 2010, Mr. Bronfman was part of a trial in the Trial Court in Paris at which the public prosecutor and the lead civil claimant both took the position that Mr. Bronfman should be acquitted. On January 21, 2011, the court found Mr. Bronfman guilty of the charge relating to his trading in Vivendi stock, found him not liable to the civil claimants, and imposed a fine of 5 million euros and a suspended sentence of 15 months. Mr. Bronfman has informed us that he intends to appeal the Trial Court decision to the Paris Court of Appeal and believes that his trading in Vivendi stock was proper. Under French law, the penalty is suspended pending the final outcome of the case.

*Steven N. Kaplan.* Age 51. Mr. Kaplan has been a member of our board of directors since July 2004. Since 1988, Mr. Kaplan has served as a professor at the University of Chicago Booth School of Business, where he currently is the Neubauer Family Professor of Entrepreneurship and Finance and serves as the faculty director of the Polsky Center for Entrepreneurship. Mr. Kaplan also serves as a director of Morningstar, Inc., a publicly-held provider of independent investment research, and on the boards of trustees of the Columbia Acorn Trust and Wanger Asset Trust. We believe Mr. Kaplan's experience as a public and private company director and thought leader in the field of entrepreneurship and management qualifies him to serve on our board.

*George P. Shultz.* Age 90. Mr. Shultz has been a member of our board of directors since April 2005. Mr. Shultz has had a distinguished career in government, academia and business. He has served as the Thomas W. and Susan B. Ford Distinguished Fellow at the Hoover Institution of Stanford University since 1991. Mr. Shultz served as United States Secretary of State from 1982 until 1989, chairman of the President's Economic Policy Advisory Board from 1981 until 1982, United States Secretary of the Treasury and Chairman of the Council on Economic Policy from 1972 until 1974, Director of the Office of Management and Budget from 1970 to 1972, and United States Secretary of Labor from 1969 until 1970. From 1948 to 1957, Mr. Shultz taught at MIT, taking a year's leave of absence in 1955 to serve as a senior staff economist on the President's Council of Economic Advisors during the Eisenhower administration. He then taught from 1957 to 1969 at Stanford University and the University of Chicago Graduate School of Business, where he also served as Dean for six years. From 1974 to 1982, Mr. Shultz was president and a director of Bechtel Group, Inc., a privately-held global leader in engineering, construction and project management. Among numerous honors, Mr. Shultz was awarded the Medal of Freedom, the nation's highest civilian honor, in 1989, and holds honorary degrees from more than a dozen universities. He also chairs the Governor of California's Economic Advisory Board and the J.P. Morgan Chase International Council; serves as Advisory Council Chair of the Precourt Energy Efficiency Center at Stanford University; chairs the MIT Energy Initiative External Advisory Board; and serves on the board of directors of Fremont Group, L.L.C., a private investment firm. We believe Mr. Shultz's

14

extensive experience at the highest levels of government and in the private sector qualifies him to serve on our board.

### Directors Whose Terms Expire in 2013 (Class III Directors)

*Stanley N. Logan.* Age 56. Mr. Logan has been a member of our board of directors since April 25, 2011. Mr. Logan was a managing director in the forensic accounting practice of LECG Corporation, a global business advisory services consulting firm, from February 2010 until March 2011. From 2006 until 2009, Mr. Logan served as a vice president of Huron Consulting Group, a consulting firm. From 2003 to 2006, Mr. Logan was managing partner of KPMG LLP's Chicago office and he was national sector leader for consumer products at KPMG in 2002. From 1980 to 2002, Mr. Logan held various positions at Arthur Andersen LLP, including audit partner, manager and senior accountant. Mr. Logan is a certified public accountant. Since 2007, he has served on the board of directors of Schawk, Inc. and is also a member of Schawk's audit committee. From 2003 until 2007, Mr. Logan served on the boards of directors of The Field Museum, where he served as a member of its finance committee, and Ravinia Festival Association, where he served as a member of its audit committee. We believe that Mr. Logan's extensive financial and accounting experience qualifies him to serve on our board.

*Arthur H. Spiegel, III.* Age 71. Mr. Spiegel has been a member of our board of directors since October 2003 and served as co-chairman of our board until July 2009. Since 2002, Mr. Spiegel has been a private investor. From 1996 until 2002, Mr. Spiegel was President of CSC Healthcare Group, which offered consulting, system integration, claims processing software and business process and IT outsourcing services to the healthcare industry. Mr. Spiegel founded APM Management Consultants, a healthcare consulting firm, in 1974 and served as its CEO until it was acquired by Computer Science Corporation in 1996. He serves on the boards of several privately-held companies. We believe Mr. Spiegel's experience as an executive and director of public and private companies, together with his deep knowledge of healthcare IT and consulting qualify him to serve on our board.

*Mark A. Wolfson.* Age 58. Mr. Wolfson has been a member of our board of directors since October 2003. Mr. Wolfson is a senior advisor of Oak Hill Capital Management, LLC, a private equity firm, and is a founder and managing partner of Oak Hill Investment Management, L.P. Mr. Wolfson has been on the faculty of the Stanford University Graduate School of Business since 1977, has served as its associate dean, and has held the title of consulting professor since 2001. He has been a research associate of the National Bureau of Economic Research since 1988 and serves on the executive committee of the Stanford Institute for Economic Policy Research. Mr. Wolfson is a director of eGain Communications Corporation, a publicly-held provider of multi-channel customer service and knowledge management software; Financial Engines, Inc., a publicly-held provider of portfolio management and retirement services and investment advice; and several privately-held companies. He is also an advisor to the investment committee of the William and Flora Hewlett Foundation. We believe Mr. Wolfson's experience as a public and private company director and thought leader in the fields of economics and management qualifies him to serve on our board.

## Our Executive Officers

Our executive officers and their respective ages and positions as of the date of this proxy statement are described below. Our officers serve until they resign or the board terminates their position. There are no family relationships among any of our directors, nominees for director and executive officers.

*Mary A. Tolan.* Age 50. *Founder, President and Chief Executive Officer, Director.* For more information, see "Our Board of Directors" above.

*John T. Staton.* Age 50. *Chief Financial Officer and Treasurer.* Mr. Staton has served as our chief financial officer and treasurer since September 2005. Mr. Staton was with Accenture for 16 years before joining our company. From 2004 to 2005, Mr. Staton led the business consulting practice within Accenture's North American products practice. Prior to this role, he was a partner in Accenture's global retail practice. Before joining Accenture, Mr. Staton held positions in General Electric's manufacturing management program and Hewlett-Packard's sales and channel marketing organizations.

15

Table of Contents

*Etienne H. Deffarges.* Age 53. *Executive Vice President.* Mr. Deffarges has served as our executive vice president since April 2004. From 1999 until joining our company, Mr. Deffarges was a partner at Accenture, most recently serving as managing partner for its global utilities industry group, and as a member of its executive committee. Prior to joining Accenture, Mr. Deffarges spent 14 years at Booz Allen Hamilton Inc., a strategy and technology consulting firm, including serving as a senior partner and global practice leader of the energy, chemicals and pharmaceuticals practice from 1994 to 1999 and as a member of its executive committee.

*Gregory N. Kazarian.* Age 48. *Senior Vice President.* Mr. Kazarian served as our senior vice president since January 2004, and until November 2009 was also our general counsel and secretary. Prior to joining our company, Mr. Kazarian was with the law firm Pedersen & Houpt, P.C. for 16 years, where he handled employment, intellectual property, creditors' rights, dispute resolution and outsourcing matters.

## CORPORATE GOVERNANCE

Our board of directors believes that good corporate governance is important to ensure that our company is managed for the long-term benefit of our stockholders. This section describes key corporate governance guidelines and practices that we have adopted. Complete copies of the corporate governance guidelines, committee charters and code of business conduct and ethics described below are available in the "Corporate Governance" section of the "Investor Relations" page of our website, www.accretivehealth.com. Alternatively, you can request a copy of any of these documents by writing to Accretive Health, Inc., 401 North Michigan Avenue, Suite 2700, Chicago, Illinois 60611, Attention: Investor Relations.

### Corporate Governance Guidelines

Our board of directors has adopted corporate governance guidelines to assist the board in the exercise of its duties and responsibilities and to serve the best interests of our company and our stockholders. A copy of these guidelines is posted on the Investor Relations section of our website. These guidelines, which provide a framework for the conduct of the board's business, are expected to provide that

- the board's principal responsibility is to oversee the management of Accretive Health;

- directors have an obligation to become and remain informed about our company and business;

- directors are responsible for determining that effective systems are in place for periodic and timely reporting to the board on important matters concerning our company;

- directors are responsible for attending board meetings and meetings of committees on which they serve;

- a majority of the members of the board of directors shall be independent directors;

- each director must limit the number of other public company boards on which he or she serves so that he or she is able to devote adequate time to his or her duties to Accretive Health, including preparing for and attending meetings;

- the non-management directors meet in executive session at least semi-annually;

- directors have full and free access to officers and employees of our company, and the right to hire and consult with independent advisors at our expense;

- new directors participate in an orientation program and all directors are expected to participate in continuing director education on an ongoing basis; and

- at least annually, the board of directors and its committees will conduct self-evaluations to determine whether they are functioning effectively.

16

Table of Contents

### Board Leadership Structure

Our board of directors has determined that the roles of chairman of the board and chief executive officer should be separated at the current time. Accordingly, our board has appointed J. Michael Cline, an independent director within the meaning of NYSE rules (see "Board Determination of Independence" below), as the chairman of the board of directors. Mr. Cline's duties as chairman of the board include the following:

- Chairing meetings of the non-management or independent directors in executive session.
- Meeting with any director who is not adequately performing his or her duties as a member of our board or any committee.
- Facilitating communications between other members of our board and the chief executive officer.
- Preparing or approving the agenda for each board meeting.
- Determining the frequency and length of board meetings and recommending when special meetings of our board should be held.
- Reviewing and, if appropriate, recommending action to be taken with respect to written communications from stockholders submitted to our board (see "Communicating with the Directors" below).

Our board decided to separate the roles of chairman and chief executive officer because it believes that leadership structure offers the following benefits:

- Increasing the independent oversight of Accretive Health and enhancing our board's objective evaluation of our chief executive officer.
- Freeing the chief executive officer to focus on company operations instead of board administration.
- Providing the chief executive officer with an experienced sounding board.
- Providing greater opportunities for communication between stockholders and our board.
- Enhancing the independent and objective assessment of risk by our board.
- Providing an independent spokesman for our company.

### Board Determination of Independence

Pursuant to the corporate governance listing standards of the NYSE, a director employed by us cannot be deemed to be an "independent director", and consequently Ms. Tolan is not an independent director. In addition, in accordance with the NYSE corporate governance listing standards, each other director will qualify as "independent" only if our board of directors affirmatively determines that he or she has no material relationship with us, either directly or as a partner, stockholder or officer of an organization that has a relationship with us. Ownership of a significant amount of our stock, by itself, does not constitute a material relationship.

Our board of directors has affirmatively determined that each of Messrs. Bronfman, Cline, Kaplan, Logan, Nayden, Shultz, Spiegel and Wolfson is "independent" in accordance with Section 303A.02(b) of the NYSE Listed Company Manual. In making this determination, our board of directors considered the percentage of our common stock owned by an entity affiliated with Accretive, LLC, of which Mr. Cline is the founding managing partner and Mr. Bronfman is a general partner, and the percentage of our common stock owned by FW Oak Hill Accretive Healthcare Investors, L.P., of which Messrs. Nayden and Wolfson are limited partners. Our board also considered that Messrs. Nayden and Wolfson are managing partners of Oak Hill Capital Management, LLC, an entity associated with FW Oak Hill Accretive Healthcare Investors, L.P., and that Mr. Wolfson is a managing partner of Oak Hill Investment Management, L.P., another entity associated with FW Oak Hill Accretive Healthcare Investors, L.P., and a Vice President and Assistant Secretary of Group VI 31, LLC, the general partner of FW Oak Hill Accretive Healthcare Investors, L.P. See "Security Ownership of Certain Beneficial Owners and Management".

All of the members of the board's three standing committees described below are independent as defined under the rules of the NYSE.

17

Table of Contents

### Director Nomination Process

The process followed by the nominating and corporate governance committee to identify and evaluate director candidates includes requests to board members and others for recommendations, meetings from time to time to evaluate biographical information and background material relating to potential candidates and interviews of selected candidates by members of the nominating and corporate governance committee and the board.

In considering whether to recommend any particular candidate for inclusion in the board's slate of recommended director nominees, the nominating and corporate governance committee applies the criteria set forth in our Corporate Governance Guidelines. These criteria include the candidate's integrity, business acumen, knowledge of our business and industry, experience, diligence, conflicts of interest and the ability to act in the interests of all stockholders. In addition to these criteria, the nominating and corporate governance committee also considers diversity in its evaluation of candidates for board membership. The board believes that diversity with respect to viewpoint, skills and experience should be an important factor in board composition. The committee does not assign specific weights to particular criteria and no particular criterion is a prerequisite for each prospective nominee. We believe that the backgrounds and qualifications of our directors, considered as a group, should provide a composite mix of experience, knowledge and abilities that will allow the board to fulfill its responsibilities.

Stockholders may recommend individuals to the nominating and corporate governance committee for consideration as potential director candidates by submitting their names, together with appropriate biographical information and background materials and a statement as to whether the stockholder or group of stockholders making the recommendation has beneficially owned more than 5% of our common stock for at least a year as of the date such recommendation is made, to Nominating and Corporate Governance Committee, c/o Accretive Health, Inc., 401 North Michigan Avenue, Suite 2700, Chicago, Illinois 60611, Attention: Corporate Secretary. Assuming that appropriate biographical and background material has been provided on a timely basis, the committee will evaluate stockholder-recommended candidates by following substantially the same process, and applying substantially the same criteria, as it follows for candidates submitted by others. If our board determines to nominate a stockholder-recommended candidate and recommends his or her election, then his or her name will be included in our proxy card for the next annual meeting.

Stockholders also have the right under our bylaws to directly nominate director candidates, without any action or recommendation on the part of the nominating and corporate governance committee or the board of directors, by following the procedures set forth above under "How and when may I submit a stockholder proposal for the 2012 annual meeting?" Candidates nominated by stockholders in accordance with the procedures set forth in our bylaws will not be included in our proxy card for the next annual meeting.

### Board Meetings and Attendance

The board met six times during the fiscal year ended December 31, 2010, either in person or by teleconference. During 2010, each director attended at least 75% of the aggregate of the number of board meetings and the number of meetings held by all committees on which he or she then served, except Mr. Shultz who attended 71% of such meetings. Mr. Shultz was unable to attend one regularly scheduled board meeting because he was out of the country attending a meeting of the Nuclear Security Project, of which he is a co-founder.

### Director Attendance at Annual Meeting of Stockholders

Our Corporate Governance Guidelines provide that directors are encouraged to attend meetings of stockholders at which non-routine matters will be considered. We did not hold an annual meeting of stockholders in 2010.

18

Table of Contents

### Risk Management

Our audit committee is responsible for overseeing our risk management function. While the audit committee has primary responsibility for overseeing risk management, our entire board of directors is actively involved in overseeing our risk management. For example, the board engages in periodic discussions with such company officers as the board deems necessary, including the chief executive officer, chief financial officer and other executive officers. We believe that the leadership structure of our board supports effective risk management oversight.

### Board Committees

Our board of directors has established an audit committee, a compensation committee and a nominating and corporate governance committee. Each committee operates under a charter that has been approved by our board of directors. Copies of each committee's charter are posted on the Investor Relations section of our website, www.accretivehealth.com.

Our board of directors has determined that all of the members of each of the board's three standing committees are independent as defined under the rules of the NYSE, including, in the case of all members of the audit committee, the independence requirements contemplated by Rule 10A-3 under the Exchange Act.

### *Audit Committee*

The members of our audit committee in 2010 were Mr. Kaplan (chair) and Mr. Wolfson. During the review of our audited financial statements for 2010, the members of the audit committee were Mr. Kaplan and Mr. Wolfson. On April 25, 2011, Mr. Logan joined our audit committee and replaced Mr. Kaplan as chair. The current members of our audit committee are Messrs. Logan (chair), Kaplan and Wolfson. Our board of directors has determined that each of the members of our audit committee satisfy the requirements for financial literacy under the current requirements of NYSE rules and regulations. Our board of directors has further determined that Mr. Logan is an "audit committee financial expert" as such term is defined in Item 407 (d)(5) of Regulation S-K. Our audit committee assists our board of directors in its oversight of our accounting and financial reporting process and the audits of our financial statements. The audit committee met eight times during 2010.

Our audit committee's responsibilities include:

- appointing, evaluating, retaining, terminating the engagement of, setting the compensation of and assessing the independence of our independent registered public accounting firm;

- overseeing the work of our independent registered public accounting firm, including the receipt and consideration of reports from the firm and reviewing with the firm audit problems, internal control issues and other accounting and financial reporting matters;

- coordinating the board's oversight of our internal control over financial reporting, disclosure controls and procedures, code of business conduct and ethics, and internal audit function;

- establishing procedures for the receipt, retention and treatment of accounting related complaints and concerns;

- reviewing and discussing with management and our independent registered public accounting firm our annual and quarterly financial statements and related disclosures;

- periodically meeting separately with our independent registered public accounting firm, management and internal auditors;

- discussing generally the type and presentation of information to be disclosed in our earnings press releases, as well as financial information and earnings guidance provided to analysts, rating agencies and others;

19